Fred D. Ervin was indicted for assault in the second degree in violation of § 13A-6-21, Code of Alabama 1975. The jury found the appellant guilty "as charged in the indictment" and the trial judge set sentence at four years' imprisonment in the penitentiary.
 I
Prior to trial, defense counsel filed a plea in abatement and a motion to quash based on the fact that the foreman of the Grand Jury that returned the indictment in this cause against this appellant, was a law partner of the assistant district attorney. At the hearing on the plea and the motion, the following occurred:
 "That if we we could stipulate basically as I have alleged in my plea in abatement or Motion to Quash that on or about January 10, 1983, the January 1983 term of the Talladega County Grand Jury was duly empaneled. That on or about that same date The Honorable Barry N. McCrary was duly appointed to serve and did serve as Foreman of that Grand Jury. That that Grand Jury did return an indictment against the Defendant signed by Barry N. McCrary as Foreman of the Grand Jury which is the indictment we are going to trial on in this case.
 "That the Honorable Barry N. McCrary is a practicing attorney in the city of Talladega, Talladega County, Alabama, and he is a law partner of The Honorable Julian M. King, Attorney at Law and a part-time Assistant District Attorney in the county, in and for this circuit." (R. 3).
The trial judge denied the appellant's plea in abatement and motion to quash based on the above. The appellant contends this was error to reversal because the above situation violates §§12-16-207, 209, Code of Alabama 1975.
Section 12-16-207, Code of Alabama 1975 provides that a prosecutor shall not "be present at or take any part in the deliberations" of the Grand Jury. Section *Page 125 12-16-209, Code of Alabama 1975, provides that a district attorney "must not be present at the expression of their [the Grand Jurors'] opinions or the giving of their votes on any matter before them."
The appellant claims these two statutes were violated because the knowledge of the assistant district attorney should have been imputed to his law partner and therefore, vicariously, disqualify him from service on the Grand Jury.
While we do not find that the situation, as set forth above, in this case expressly violates the above cited statutes, or that the law partner was incompetent, as a matter of law, to serve as a grand juror because of a pre-conceived bias or prejudice, we do believe any possibility of a conflict of interest should be avoided in this case. See Sheppard v. State,243 Ala. 498, 10 So.2d 822 (1942).
In order to avoid any claim of impropriety, we are of the opinion that the proper course of action herein is to remand this case with directions to the trial court, so that the trial judge may make a factual determination as to what confidential information, if any, with reference this cause, was exchanged between the law partner and the district attorney or any full or part time member of his staff. If the trial judge finds that the law partner possessed no disqualifying knowledge when the Grand Jury was convened, then he was, in fact, competent to serve as a member of and to be the foreman of the Grand Jury.
As this court stated in Terry v. State, 424 So.2d 710
(Ala.Cr.App. 1982):
 "We do not wish to be understood as retreating from the high standards of ethical conduct embodied in Canon 9 of the Alabama Code of Professional Responsibility. While we reaffirm the principle that attorneys should avoid even the appearance of impropriety, we agree with the South Dakota Supreme Court, that:
 `[w]hen dealing with ethical principles it is apparent that we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.'
Schmidt v. Pine Lawn Memorial Park, Inc. [86 S.D. 501] 198 N.W.2d [496] at 502 [1972] (Quoting United States v. StandardOil Co., 136 F. Supp. 345, 367 (S.D.N.Y. 1955)).
 `Improper surface appearances are capable of damaging the judicial function and image as well as carrying a potential for actual injury to a party. However, the discretion of the trial judge in such matters is very broad for appearances may be misleading and the overall proper administration of justice may well allow the trial judge to ignore appearance in favor of fact. What might appear as a conflict of interest on the surface can, in fact, be no conflict at all or so insignificant as to be overcome by other circumstances.'
Schmidt, supra, 198 N.W.2d at 502, quoting Waters v. WesternCo. of North America, 436 F.2d 1072, 1073 (10th Cir. 1971)."
Therefore, this cause is remanded to the trial court with directions to make a factual determination as to whether there existed a conflict of interest in this case, as herein noted. See Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406,408, 100 L.Ed. 397 (1956).[1]
This cause is remanded to the trial court with directions that the appellant and his counsel be present and a hearing conducted on the issue herein set forth. A transcript of this hearing shall be prepared following this hearing, with the appropriate findings set forth in writing by the trial judge, and *Page 126 
such transcript promptly returned to this court.
REMANDED WITH DIRECTIONS.
All the Judges concur.
 On Return to Remand
This cause was remanded to the circuit court for a hearing, to determine whether or not the assistant district attorney whose law partner served as foreman of the Grand Jury which returned the indictment in the instant case had received information prior to his service on the Grand Jury, which might have precluded or prevented such service. The trial court determined that the law partner who served as foreman of the Grand Jury possessed no disqualifying information relative to this case.
 I
The trial court submitted its written findings to this court which reveal the following:
 ". . . Barry McCrary possessed no disqualifying knowledge when this Grand Jury that indicted Fred D. Ervin was convened on January 10, 1983, and was therefore competent to serve as a member of and to be foreman of the Grand Jury based on the following findings of fact:
 "(1) That Assistant District Attorney King did not confer with his partner, Barry McCrary, relative to the prosecution of Fred D. Ervin at any time prior to the convening of the Grand Jury on January 10, 1983 or subsequent to the convening thereof in which Fred D. Ervin was indicted.
 "(2) That Assistant District Attorney King had no knowledge that Fred D. Ervin had been charged with any crime or that his case was to be presented to a Grand Jury for its consideration prior to January 10, 1983.
 "(3) That Assistant District Attorney King did not participate in prosecution of Fred D. Ervin at this Grand Jury during this session. In fact, Mr. King was in the hospital when this Grand Jury was convened by Judge William C. Sullivan on January 10, 1983. That a true bill was rendered by this Grand Jury as to Fred D. Ervin on January 11, 1983 and Assistant District Attorney King did not make an appearance at this Grand Jury until January 12 or January 13, 1983.
 "(4) That the law partner to Assistant District Attorney King, namely Barry McCrary, did not confer with Assistant District Attorney King or any other member of the District Attorney's Staff including the District Attorney, Robert Rumsey, relative to the prosecution of Fred D. Ervin at any time prior to the convening of this Grand Jury on January 10, 1983, that indicted Fred D. Ervin.
 "(5) That Attorney Barry McCrary had no knowledge that Fred D. Ervin had been charged with any crime or that this case was to be presented to a Grand Jury for its consideration prior to January 10, 1983.
 "(6) That Attorney Barry McCrary and Assistant District Attorney King did not confer with each other after the convening of this Grand Jury relative to the prosecution of Fred D. Ervin while this Grand Jury was in session.
 "(7) That Attorney McCrary had no preconceived bias or prejudice as a Grand Juror in this case either because of his partnership with Assistant District Attorney King or for any other reason presented to this Court.
Done this 7th day of September, 1983.
 /s/ Jerry L. Fielding
Jerry L. Fielding Circuit Judge"
From the above recitation, this court finds that what appeared to have been a possible conflict of interest was, in fact, no conflict whatever. See Terry v. State, 424 So.2d 710
(Ala.Cr.App. 1982). We can find no violation of §§ 12-16-207, 209, Code of Alabama 1975 or the Code of Ethics for Lawyers. Therefore, we hold the assistant district attorney's law partner was competent to serve as a member of and to be foreman of the Grand Jury which returned the indictment in the case at bar. *Page 127 
The appellant's motion to quash the indictment was properly denied by the trial judge.
 II
The appellant, following a presentation of the State's case made a motion to exclude the evidence, and after trial, filed a motion for new trial, each of which challenged the weight and sufficiency of the State's evidence. Both of these motions were denied by the trial judge.
Briefly stated, the victim in this cause was Katherine Oden, the former wife of the appellant, who lived at 30-C Howard Drive in Sylacauga, on October 7, 1982, with two children of her former marriage to the appellant, Fred Ervin. The two children's names are Kenyata Christopher Oden, age 12 and Crystal Shena Oden, age 8. The appellant came to the Oden apartment about 5:30 in the morning, knocked on the door on the pretext of having some money for her, and after the door was opened, Fred Ervin began pulling on Katherine Oden, and struck her with his fist. He cursed and told her, "I don't appreciate the s___ you're pulling on me" and struck her a second time. She stated that he struck her with what appeared to be a flashlight, knocked her down and cursed, saying, "I will kill your g.d. ass if you don't leave those men's alone." She stated that a neighbor and her children came running and found her lying on the floor bleeding and took her to the hospital about 6:30 that morning. She stated that she required about eight stitches and that she remained in the hospital two and a half days and had to go back to the doctor as an out patient because her jaw was broken and had to be wired for six weeks.
Katherine Oden's testimony was corroborated by her son, Kenyata or Ken Oden, and her daughter, Crystal Oden. The two children told of going next door and getting a neighbor to telephone police and help take their mother to the hospital.
This incident was also confirmed by their next door neighbor, Fannie Hoytt, who told of hearing Katherine Oden screaming and opening the door and seeing Ms. Oden's former husband standing over her with a flashlight. He turned to her and told her, "Bitch, get back in your own damn apartment and mind your own business." She heard Mrs. Oden screaming, "Fred, leave me alone." She stated that she helped Mrs. Oden's sister take her to the hospital.
The appellant testified in his own behalf, indicating that he had gone by the apartment to see about the children on the early morning of October 7, 1982. He stated he lived at his parents' home. He stated that when he opened the door, his former wife asked him if he had brought her some money and when he said that he had not, she grabbed a butcher knife and started chasing him around the apartment. He stated that they wrestled back and forth and that his wife fell and struck her head on a ceramic flower pot shaped like an elephant. He stated that this was how she cut her head. Appellant denied carrying a flashlight to the apartment or striking his wife with a flashlight or his fists.
Intent to take life may be shown by inference, via the character of the assault, the use of a deadly weapon, and other attendant circumstances. Tolliver v. State, 50 Ala. App. 654,282 So.2d 92; Roberts v. State, 49 Ala. App. 729, 275 So.2d 709
(1973).
The appellant does not dispute the fact that he scuffled or wrestled with his former wife, but contended that she fell and struck her head, which resulted in the head injuries. This was in direct conflict with the testimony of the victim, Mrs. Oden, both children, and the neighbor, Mrs. Hoyett.
The jury resolved this issue against the appellant and we think that verdict was properly sustained by the State's evidence. Baldwin v. State, 342 So.2d 940 (Ala.Cr.App. 1977) and authorities therein cited.
After considering all the factors herein set forth, we conclude that the trial judge properly overruled the appellant's motion to exclude the State's evidence, and *Page 128 
also properly denied his motion for new trial which challenged the weight and sufficiency of the cause. Baldwin, supra, and authorities therein cited.
There was no exception to the oral charge of the court.
We have carefully examined this entire transcript and find this record free of error. The judgment of the trial court is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] The Fifth Amendment to the United States Constitution requires an indictment by a legally constituted and unbiased grand jury.
See also United States v. Sells Engineering, Inc., et al, ___ U.S. ___, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983).