521 So.2d 997 (1986)
Nathaniel Murray GARRISON
v.
STATE.
6 Div. 901.
Court of Criminal Appeals of Alabama.
May 13, 1986.
On Return to Remand June 30, 1987.
Rehearing Denied September 8, 1987.
Certiorari Denied November 20, 1987.
*999 Richard S. Jaffe, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and P. David Bjurberg and William D. Little, Asst. Attys. Gen., for appellee.
Alabama Supreme Court 86-1622.
McMILLAN, Judge.
This appeal follows a conviction for the offense of murder during the commission of a burglary and a sentence of life imprisonment without parole. For the reasons outlined below, this case is remanded to the trial court, with directions.
An initial examination of the record on appeal fails to establish that the appellant was informed of his right to be treated as a youthful offender under Alabama law. For this reason, this case is remanded to the trial court for a hearing on this issue. Tatum v. State, 405 So.2d 951, 952 (Ala.Cr. App.1981), appeal after remand, 405 So.2d 952 (Ala.Cr.App.1981), cert. denied, 405 So. 2d 954 (Ala.1981).
We remand this case to the trial court with directions to conduct a hearing to determine whether, prior to trial, the appellant was apprised of his right to be treated as a youthful offender. A copy of the record of the hearing, along with the trial court's order setting out written findings of fact and conclusions of law, should then be filed with this court. Because we are remanding this case to the trial court for a hearing, we will not consider the additional issues raised in this appeal at this time.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
McMILLAN, Judge.
The appellant, Nathaniel Garrison, was found guilty of murder during the commission of burglary in the second degree and was sentenced to life without parole.
James Jackson testified that he worked as a security guard and was scheduled to work from 10:30 p.m. until 6:30 a.m. at Cavalier Homes. He testified that when he arrived at Cavalier Homes, he could not get in the front door, and, therefore, walked around to the gate, which had been "busted wide open." Jackson walked in and observed, about 20 or 30 feet from the entrance, the gun of Floyd Bartlett, one of the guards on duty during the previous theft. He continued walking and observed blood all over the hall leading to the bathroom, after finding the bathroom door locked. Thereafter, he went to call the police. Later, Bartlett's body was discovered in the bathroom, leaning over the commode. His hands and feet had been taped, but he had managed to free his hands before he died.
A two-by-three board was discovered in an office across the hall from the bathroom. Sixteen microwave ovens, seven refrigerators and a dump truck were missing from Cavalier Homes. The production superintendent testified that he gave the serial numbers of the microwave ovens and refrigerators to an A.B.I. Criminal Investigator. The truck was subsequently located near the residence of J.W. Tubbs in Franklin County. After following tire prints *1000 leading to Tubbs's barn, approximately half a mile from his house, investigators found refrigerators and microwave ovens with serial numbers matching those stolen. Tubbs was questioned, and a warrant was then executed for the appellant's arrest. He was found inside his sister's apartment in Leeds, Alabama, sleeping on the couch. He was placed under arrest and read his constitutional rights. The appellant signed a waiver form and gave a written statement relating the specifics of the crime. The defense counsel, at trial, stipulated to the voluntariness of the statement. The appellant, in his statement, admitted that Randy Self, Kenny Garrison (the appellant's brother), and he went to Cavalier Homes in order to steal the refrigerators and microwave ovens and sell them to Tubbs. He claimed that they had no intention of hurting anyone and spent a good deal of time insuring that there were no guards present. He indicated that one of them was carrying a board in case a guard approached them. He stated that, just before they turned a corner, "the guard kind of popped up on us and we didn't have nothing to do but hit him." The appellant admitted to taping the guard and stated that he was bleeding severely out of his ear. He claimed that he attempted to stop the bleeding so that the guard would not die. They dragged the guard into the bathroom and locked the door. Thereafter, he stated, they loaded the merchandise on the truck.
Randy Self, who is under indictment for felony murder arising out of the facts of this case, testified that it was the appellant's suggestion to break into Cavalier Homes and steal the merchandise. He testified that, prior to entering the plant, the appellant told the others that "he would take care of" anyone whom they encountered. They scouted the premises for security guards approximately 25 minutes before entering the building. He further testified that Kenny Garrison walked down the hallway and returned, stating that someone was there. He stated that the appellant had picked up the board and that he had picked up a roll of black duct tape prior to entering the building. He testified that they had planned for the appellant to knock out any guards and that Self was to tape the guard's hands and feet. Self testified that he entered the office and thereafter "heard a[n] `unk,'" walked out of the office, and observed the guard lying on the floor. He testified that he handed the appellant and Kenny Garrison the tape and left. He further testified that neither of them had the board in his hands. Self stated that he then ran out back, but returned to help load some appliances. They then left the premises of Cavalier Homes.

I
The appellant argues that the trial court erred in failing to notify him of his right to apply for "youthful offender" status, as the appellant was 19 years old at the commission of the offense. This court remanded this cause to the trial court in order to conduct a hearing to determine whether the appellant was apprised of his right to be treated as a youthful offender prior to trial. The trial court, in compliance with this order, conducted the hearing and returned a copy of the record of the hearing, along with the trial court's order setting out written findings of fact and conclusions of law. The trial court found that the appellant was apprised of this right, and the probation officer's report was introduced without objection and amended. The trial court denied the appellant's application for youthful offender treatment, based upon the report of the probation officer and the nature of the offense. Tatum v. State, 405 So.2d 952 (Ala.Cr.App.1981), appeal after remand, 405 So.2d 952 (Ala.Cr. App.1981), cert. denied, 405 So.2d 954 (Ala. 1981).

II
The appellant argues that reversible error occurred when he was sentenced on a charge and conviction of capital murder but the verdict returned was not a verdict for capital murder. Specifically, he argues that although he was sentenced to life without parole, he was never convicted of a capital offense. The verdict returned was as follows:

*1001 "We, the jury, find the defendant guilty of murder during the commission of burglary in the second degree as charged in the Indictment."
It is clear that this verdict follows the language of § 13A-5-40(a), Code of Alabama (1975), which addresses capital offenses and states in pertinent part:
"(a) The following are capital offenses:
"....
"(4) Murder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant...."
The jury returned a verdict of guilty in the form which the trial court instructed for a finding of guilt of the offense of murder during the commission of burglary in the second degree, as opposed to the form which the trial court instructed was to be used should the jury find the appellant guilty of murder. The trial judge further charged the jury that the difference between murder "and capital murder is that in order to find the defendant guilty of murder under [§ 13A-6-2] is that there only has to be a death caused by the defendant or some other person without any intent being necessary." Thus, the jury was aware that intent was required for a finding of guilt of the capital murder charge.

III
The appellant argues that reversible error occurred from the failure of the indictment to charge a capital offense, from a fatal variance in the indictment, and from the failure of the indictment to adequately apprise the appellant of the charges against him. Count two of the indictment charged appellant with capital murder, stating:
"The Grand Jury of said County charge, before the finding of this indictment, NATHANIEL GARRISON and KENNY DALE GARRISON, whose names are otherwise unknown to the Grand Jury, did intentionally cause the death of FLOYD BARTLETT, by striking him in the head with a board or other blunt instrument and NATHANIEL GARRISON and KENNY DALE GARRISON caused said death during the time that NATHANIEL GARRISON, KENNY DALE GARRISON AND RANDY SELF knowingly and unlawfully entered or remained or attempted to enter or remain, unlawfully in a building of CAVALIER HOMES, INC., with intent to commit theft of property, 1st degree, a felony, therein, and while effecting entry or while in said building or in immediate flight therefrom, NATHANIEL GARRISON and KENNY DALE GARRISON, did use or threaten the immediate use of a board or other blunt instrument, a dangerous instrument, in violation of Section 13A-7-6(a)(3) of the Code of Alabama, against the peace and dignity of the State of Alabama."
The appellant alleges that this indictment fails to charge a capital offense in that there is no specific use of the term "capital offense" and because it refers to a violation of § 13A-7-6(a)(3), which charges burglary in the second degree. It is clear from a reading of this count of the indictment that the first section charges the intentional murder element of the capital offense, while the latter section charges a violation of § 13A-7-6(a)(3), the burglary element.
"An indictment which follows the language of a statute is sufficient to apprise the appellant of the charges against him, and to allow him to prepare a defense. Boyington v. State, 45 Ala.App. 176, 227 So.2d 807, 809 (1969); Frye v. State, 369 So.2d 892 (Ala.Cr.App.1979); Brown v. State, 392 So.2d 1248 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1266 (Ala.1981); Wilder v. State, 401 So.2d 151 (Ala.Cr. App.), cert. denied, 401 So.2d 167 (Ala. 1981), cert. denied, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981)."
Copeland v. State, 455 So.2d 951, 956 (Ala. Cr.App.1984), cert. denied, 455 So.2d 956 (Ala.1984).
The Alabama Supreme Court has held:
"Miscitation of a code section does not void an indictment which otherwise states an offense; and, in the absence of a showing of actual prejudice to the defendant, *1002 reference to the erroneous code section will be treated as mere surplusage."
Ex parte Bush, 431 So.2d 563, 564 (Ala. 1983), cert. denied, Bush v. Alabama, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). Furthermore, an indictment which satisfactorily charges an offense, except for its failure to cite the statute, is generally valid. Bice v. State, 472 So.2d 440, 442 (Ala.Cr.App.1985).
There is no requirement that an indictment charging the commission of capital murder actually use the exact terminology "capital murder"; nor does the appellant cite any authority for such a proposition. According to § 15-8-21, Code of Alabama (1975), "[w]ords used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning." Furthermore, according to § 15-8-4, Code of Alabama (1975):
"An indictment must not be held insufficient, nor can the trial, judgment or other proceedings thereon be affected by reason of any defect or imperfection in any matter of form which does not prejudice the substantial rights of the defendant on the trial."
Thus, where an appellant was charged with intentionally causing the death of another person during the course of a theft, in an indictment which he alleged was defective because it did not use the word "robbery" as used in § 13A-5-40(a)(2), Code of Alabama (1975), this court found that the indictment adequately described the crime of robbery within its statutory meaning. The indictment was, therefore, not defective. Dewhart v. State, 455 So.2d 167 (Ala.Cr. App.1984).
The appellant further argues that the indictment contained a fatal variance in that it purports to charge the appellant and Kenny Dale Garrison as being accomplices in causing the victim's death, as well as accomplices with Randy Self in respect to the theft of property in the first degree. The appellant claims that there was neither proof nor instruction on the law of complicity, accomplice law, or co-conspirator law. He further argues that theft in the first degree was never charged to the jury, nor were the terms "theft" or "property" defined, nor the degrees of theft explained. The State argues that the appellant's contentions are without merit in that Kenny Garrison and the appellant were charged as principals in the capital murder. The State further argues that, because the appellant made no objection to the omission of charges on the law of accomplices and conspiracy, that issue is not preserved for review, and that the same is true as to the omission of charges on theft. The State also argues that first degree theft was not charged in the indictment, rather intent to commit a first degree theft was charged as an element of second degree burglary.
As to the appellant's complaints concerning the omission of charges as to accomplice or complicity law and the law of theft, Rule 14, Alabama Temporary Rules of Criminal Procedure, provides in pertinent part:
"No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
Thus, this issue has not been preserved, because any alleged error was not brought to the attention of the trial court, and it will not now be addressed on appeal. See Ex parte Allen, 414 So.2d 993 (Ala.1982).
The appellant's argument that, because the indictment charged the three perpetrators as accomplices, evidence of conspiracy was required, is without merit. "Alabama Code § 13A-2-23 (1975) continues the long recognized abolition of the distinction between principals and accessories in Alabama." Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, 471 So.2d 493 (Ala.1985). (The evidence shows that the two perpetrators acted as both principals and accessories at different times.) "Although Section 13-9-1 has been repealed, there isfor purposes of indictment *1003 and trialstill no distinction between principals and accessories under Alabama law. See Alabama Code §§ 13A-2-20 and -23 (1975) (Commentary)." Lewis v. State, 469 So.2d 1291, 1297 (Ala.Cr.App.1984), affirmed, 469 So.2d 1301 (Ala.1985).
Complicity is addressed in § 13A-2-23, Code of Alabama (1975), as follows:
"A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
"(1) He procures, induces or causes such other person to commit the offense; or
"(2) He aids or abets such other person in committing the offense; or
"(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make."
The State presented evidence of the appellant's guilt as a principal and as an accomplice in aiding and abetting in the commission of the offense.
The appellant argues that the State failed to prove theft in the first degree after charging such in the indictment. However, as indicated by the State, the intent to commit theft in the first degree was charged in the indictment as an element of second degree burglary. The indictment charges the appellant with a violation of § 13A-7-6, which states:
"(a) A person commits the crime of burglary in the second degree if he knowingly enters or remains unlawfully in a building with intent to commit theft or a felony therein and, if in effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
"....
"(3) Uses or threatens the immediate use of a dangerous instrument."
An indictment for burglary must set forth and define the crime intended to be committed. Popwell v. State, 480 So.2d 41, 45 (Ala.Cr.App.1985). See also Cliatt v. State, 348 So.2d 509 (Ala.Cr.App.1977), Coleman v. State, 443 So.2d 1355 (Ala.Cr. App.1983). "The intent is the gravamen of the offense charged, although the intended act need not be carried to completion." Coleman v. State, 443 So.2d 1355, 1358 (Ala.Cr.App.1983).
Generally, where the offense of burglary is equivocal, the element of intent may be inferred from the act itself. Popwell v. State, supra, at 44. According to 13 Am. Jur.2d, Burglary § 52 (1964), "intent" is defined as:
"[A] state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances."
The jury could have reasonably concluded that the appellant intended to unlawfully enter Cavalier Homes with the intent to commit a theft therein, based on the evidence presented by the State.
Furthermore, the appellant has waived the issue of the sufficiency of the evidence of such intent by failing to move for a judgment of acquittal, to request the affirmative charge, to challenge by a motion to exclude, or to move for a new trial on this ground. English v. State, 457 So.2d 458 (Ala.Cr.App.1984); Murry v. State, 455 So.2d 82 (Ala.Cr.App.1983).
The appellant further argues that the indictment was confusing, vague, and ambiguous. According to Rule 15.2(a), Alabama Temporary Rules of Criminal Procedure, "The indictment or information shall be a plain, concise statement of the facts in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment." See also § 15-8-25, Code of Alabama (1975). The indictment follows the statutory form for the crimes charged. The appellant was sufficiently apprised of the particulars of the offenses to enable him to prepare a defense. Accordingly, *1004 the appellant's vagueness claim is without merit. See Harrison v. State, 384 So.2d 641 (Ala.Cr.App.1980); Matthews v. State, 401 So.2d 241 (Ala.Cr.App.), cert. denied, 401 So.2d 248 (Ala.1981); Jackson v. State, 516 So.2d 726 (Ala.Cr.App.1985), modified on other grounds, Ex parte Jackson, 516 So.2d 768 (Ala.1986).

IV
The appellant alleges that reversible error occurred because the oral charge given to the jury was "confusing and misleading." The appellant alleges error in the trial court's failure to charge on the legal presumption of innocence, the reasonable doubt standard, and circumstantial evidence. However, no objection was raised to these alleged omissions; thus, those issues were not preserved for our review. Alabama Temporary Rules of Criminal Procedure, Rule 14. See also Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981), affirmed, 414 So.2d 993 (Ala.1982).
Furthermore, an exception to a court's oral charge must be specific, Allen v. State, 414 So.2d 163, 166 (Ala.Cr.App.1982), and no objection was made as to the oral charge being confusing or misleading. Moreover, the only objection made by the defense counsel, with the exception to an objection based on the court's refusal to charge the jury on manslaughter, was as follows:
"Judge, on behalf of the defendant I would like to except to that portion of the oral charge given on the explanation of murder saying that the difference in it and the capital murder was the intent because I think the law is clear that the difference between murder and the circumstances as you have charged the jury in capital murder is the aggravating circumstances."
The defense counsel, in his brief, alleges that "the real error, however, lies ... in the Court's assumption that the distinction between a capital offense and murder depended upon whether or not the killing occurred during the course of a burglary." He further asserts that "[t]he real question was not whether the killing occurred during the course of a burglary but whether Nathaniel Garrison either intentionally killed the alleged victim during the course of a burglary, or if he did not, then whether he aided and abetted someone else in the intentional killing of the alleged victim."
However, according to the record, just prior to this objection by the defense counsel, the trial court charged as follows:
"You will notice that the difference between this [his charge as to the crime of murder] and capital murder is that in order to find the defendant guilty of murder under this section [§ 13A-6-2] is that there only has to be a death caused by the defendant or some other person without any intent being necessary." (Emphasis added.)
Thus, the trial court explained to the jury that the element of intent is a distinguishing factor between capital murder and murder.
"`A defendant is bound by the grounds of objection he stated at trial and may not expand those grounds on appeal.' Davis v. State, 440 So.2d 1191, 1194 (Ala. Cr.App.1983), cert denied, 465 U.S. 1083, 104 S.Ct. 1452, 79 L.Ed.2d 770 (1984). Any additional objections to the charge have been waived for purposes of appeal because they were not presented at the trial court level. Miller v. State, 405 So.2d 41, 49 (Ala.Cr.App.1981)."
Sanders v. State, 486 So.2d 1328, 1329 (Ala.Cr.App.1986) (wherein the appellant's argument on appeal that the requested charges were argumentative and constituted an incorrect statement of the law were waived).
Nevertheless, we do not find that the trial court's oral charge was misleading and required a reversal. According to Rule 45, Alabama Rules of Appellate Procedure, no judgment may be reversed, nor new trial granted on the ground of misdirection of the jury, unless it appears that the error complained of has probably injuriously affected the substantial rights of the parties. "`When reviewing the propriety of a trial court's jury charge, this Court must consider the charge as a whole, in its totality, without isolating statements, which individually *1005 may appear prejudicial, from the context in which they were made.' Johnson v. State, 399 So.2d 859, 865 (Ala.Cr.App. 1979)." Spears v. State, 500 So.2d 96, 99 (Ala.Cr.App.1986).

V
The appellant argues that the trial court erred in refusing to instruct the jury on lesser included offenses to the charge of capital murder; specifically, lesser included offenses of manslaughter, criminally negligent homicide, burglary, and theft. However, the appellant did not object at trial to the omission of these charges and, therefore, this issue has been waived. Rule 14, Alabama Temporary Rules of Criminal Procedure. Despite the defense counsel's argument in brief that "errors of this nature and magnitude are so fundamental to one charged with a capital offense, that they amount to reversible error without the necessity of specifically preserving the record," we do not find that the trial court erred in failing to charge on these lesser included offenses, in light of the overwhelming evidence presented against the appellant. The appellant received a fair trial, at which he was represented by competent counsel. "`Plain error is error which is obvious and which affects a litigant's substantial rights, and should be recognized only where there are exceptional circumstances which require the court to recognize the error to avoid a miscarriage of justice.' United States v. Hernandez-Cuartas, 717 F.2d 552, 555 (11th Cir.1983)." Crowder v. State, 476 So.2d 1241, 1243 (Ala.Cr.App.1985).

VI
The appellant argues that the State did not present sufficient evidence to convict him of capital murder. However, the record indicates that the appellant failed to challenge the sufficiency of the evidence by motion for judgment of acquittal to request the affirmative charge, to move to exclude, or to move for new trial. English v. State, 457 So.2d 458 (Ala.Cr.App.1984); Murry v. State, 455 So.2d 82 (Ala.Cr.App.1983). Therefore, the issue of sufficiency of the evidence is not preserved for review.
Even so, the State presented sufficient evidence to sustain the appellant's conviction. "In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr. App.1984), affirmed, 471 So.2d 493 (Ala. 1985). Although the appellant contends that he presented evidence that he did not intend to kill the guard, intent to kill may be inferred from the use of a deadly weapon or other attendant circumstances. Young v. State, 428 So.2d 155, 159 (Ala.Cr. App.1982); Tucker v. State, 383 So.2d 579, 585 (Ala.Cr.App.), cert denied, 383 So.2d 586 (Ala.1980); Fulghum v. State, 291 Ala. 71, 277 So.2d 886, (1973); Scanland v. State, 473 So.2d 1182 (Ala.Cr.App.), cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985). Conflicting evidence as to intent presents a question for the jury. Harris v. State, 347 So.2d 1363 (Ala.Cr. App.), cert. denied, 347 So.2d 1368 (Ala. 1977); Harrell v. State, 470 So.2d 1303 (Ala.Cr.App.1984), affirmed, Ex parte Harrell, 470 So.2d 1309 (Ala.1985), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
Furthermore, despite the appellant's argument that they carried no weapon into the Cavalier Homes, the board which they carried constituted a "deadly weapon" under the circumstances of this case.
"A deadly weapon is not necessarily an instrument from which a blow would ordinarily produce death, but one from which, as it was used, death would probably result. The manner of its use and the subject against whom it is wielded, as well as the actual results of its use are to be considered.`... [A] deadly weapon is not only a weapon with which death may be easily and readily produced, but one which is likely to produce death or great bodily harm from the manner in which it is used.' Williams *1006 [v. State, 251 Ala. 397, 39 So.2d 37 (1948)]."
Hall v. State, 348 So.2d 870, 873 (Ala.Cr. App.1977), cert. denied, 348 So.2d 875 (Ala. 1977), cert denied, Hall v. Alabama, 434 U.S. 1021, 98 S.Ct. 745, 54 L.Ed.2d 768 (1978).

VII
The appellant argues that it was reversible error for the trial court to allow evidence that the investigators had difficulty finding him, arguing that that evidence would have been taken as evidence of "flight," because he argues there was no evidence that he was actually fleeing or that he had knowledge of any criminal charges against him. The record indicates that the following transpired during the direct examination of C.J. Cox, an investigator for the district attorney's office:
"Q: What if anything did you do?
"A: I was trying to find Nathaniel.
"Q: Did you conduct an intensive search for him?
"A: Yes, sir, I did.
"Q: Did you find him?
"A: Yes, sir.
"Q: Where all did you look for him?
"[Defense Counsel]: We object to that.
"THE COURT: Overruled."
No further objections were made by the defense counsel as to the search. Neither was there error in the admission of testimony regarding the investigation and search for the appellant, nor has the appellant adequately preserved this issue for review.
"We note initially that specific objections are necessary to preserve error. Gibbs v. State, 342 So.2d 448 (Ala.Cr. App.1977)... The trial court must be apprised of the basis for the objection with sufficient particularity to allow an informed decision to be made on the particular legal issues involved. Bland v. State, 395 So.2d 164, 168 (Ala.Cr.App. 1981). A trial court need not cast about for tenable grounds of an objection to evidence. Watkins v. State, 219 Ala. 254, 122 So. 610 (1929)."
Wyrick v. State, 409 So.2d 969, 974 (Ala. Cr.App.1981).
AFFIRMED.
All the Judges concur.