Robert Leo Carroll was convicted of murder made capital by § 13A-5-40(a)(13), Ala. Code 1975. Carroll was given a bifurcated trial, in accordance with § 13A-5-43. After the sentencing phase of the trial, the jury returned an advisory verdict recommending death. The trial court accepted the jury's recommendation and sentenced Carroll to death by electrocution.
The Court of Criminal Appeals affirmed the conviction but remanded the case to the trial court for written findings on the issue of mitigating circumstances. The court affirmed the sentence on return to the remand. Carroll v. State,599 So.2d 1253 (Ala.Cr.App. 1992) (on return to remand). The Court of Criminal Appeals in Carroll v. State, at 1259, had quoted the following portion of the trial court's statement of facts:
 "While the defendant was an inmate in the county jail in Sumter County, Alabama and awaiting transportation to the state penitentiary, he became involved in an altercation with William Earl Sanders [another inmate]. The altercation began when [Sanders] and another individual while playing kickball in the exercise yard allowed a ball to strike a cup of ice that the defendant had placed on a concrete support. An argument ensued between the defendant and [Sanders]. The defendant exited the exercise yard and went upstairs to his cell and obtained a sharp instrument that was concealed near his jail cell. This instrument was a sharpened wire from a piece of broom that had been rubbed on the floor or some other place to make it extremely sharp. The defendant returned to the exercise yard and stabbed [Sanders] in the heart with the sharpened instrument. The evidence was that [Sanders] died immediately in the exercise yard."
In reviewing a death penalty case, this Court will notice any plain error or defect in the proceeding under review, regardless of whether it was brought to the attention of the trial court. Rules 45A and 39(k), A.R.App.P. Ex parte Bankhead,585 So.2d 112 (Ala. 1991). This Court will take appropriate appellate action whenever the error "has or probably has adversely affected the substantial right of the appellant." Rule 45A. "Plain error" arises only if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceeding. United Statesv. Chaney, 662 F.2d 1148, 1152 (5th Cir. 1981). See also Exparte Womack, 435 So.2d 766 (Ala. 1983), cert. denied,464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983). We have thoroughly reviewed the record before us, considering the issues raised and looking for plain error. We will address the following three issues.
 I.
Did the Court of Criminal Appeals err in holding that the State proved beyond a reasonable doubt that Carroll had been convicted of another murder in the 20 years preceding this murder?
According to § 13A-5-40(a)(13), the following is a capital offense: *Page 876 
 "Murder by a defendant who has been convicted of any other murder in the 20 years preceding the crime; provided that the murder which constitutes the capital crime shall be murder as defined in subsection (b) of this section; and provided further that the prior murder conviction referred to shall include murder in any degree as defined at the time and place of the prior conviction."
To prove the prior murder conviction, the State introduced a certified copy of an order of the Common Pleas Court of Montgomery County, Ohio. That order read:
 "On this 28th day of June, 1972, the defendant herein, Robert Leo Carroll, appeared in open Court with his counsel of record and it appearing to this Court that the defendant having previously entered a plea of guilty to the reduced and included offense of Murder Second Degree, which plea was accepted by the Court; and it further appearing that the defendant had been committed to the Lima State Hospital at Lima, Ohio and that a written report concerning his mental status having been received by this Court under date of March 22, 1972 wherein in a subsequent hearing . . . was held on April 12, 1972, this Court did, after hearing evidence, find the defendant sane and competent to stand trial; and it further appearing that the defendant was subsequently examined by Dr. D.A. Thomas, a physician specializing in mental diseases, who did file a written report of his examinations and evaluations to this Court; and further this Court did order the matter of sentencing of this defendant to be continued until the 28th day of June, 1972 so that evidence may be received in open Court from Dr. D.A. Thomas, and the said doctor having testified and on the evidence this Court does find that the defendant is a psychopathic offender.
 "And the Court did then inquire of the defendant if he had anything to say why judgment and sentence should not now be pronounced against him, and the Court finding no further cause why said sentence should not now be pronounced, it is therefore ordered on this 28th day of June, 1972, that the defendant be and is hereby sentenced to the Ohio State Penitentiary for Life. . . .
 "The execution of said sentence is hereby suspended and the Court does . . . hereby order [an] indefinite commitment of the defendant to the Department of Mental Hygiene and Correction at its State facility, the Lima State Hospital at Lima, Ohio . . . until he has recovered or his condition appears to have improved to such an extent that he no longer needs the special custody, care or treatment of such institution. . . ."
A postscript to this order stated: "The defendant has been in custody since March 21, 1970."
Carroll objected to the use of this document as proof of the 20-year element of § 13A-5-40(a)(13), on the following grounds: 1) that the certified copy of the order is a sentencing memorandum document and not a judgment of conviction as required by Alabama law; and 2) that the sentencing memorandum document does not show, beyond a reasonable doubt, a conviction of another murder in the 20-year period preceding the crime charged here. Carroll contends that for proof of a prior conviction, Alabama law has traditionally required the introduction into evidence of a document showing the entry of a guilty plea and its acceptance by a court, a verdict of guilty by a jury and its acceptance by the court, or a judgment by the court.
Although the terms "judgment," "sentence," and "determination of guilt" are defined in Rule 26.1(a)(1), (2), and (3), A.R.Crim.P., respectively, the term "conviction" is not defined in Rule 26.1(a).
In this case, the certified copy of the Ohio trial court's order, which includes the sentence imposed, constitutes proof beyond a reasonable doubt that Carroll had been convicted of another murder in the 20-year period preceding this murder. The order reflects that Carroll had been in custody for some offense since March 21, 1970. Carroll was committed to the Lima State Hospital until he was restored to sanity and could stand trial. On April 12, 1972, the Common Pleas Court of Montgomery County found *Page 877 
Carroll competent to stand trial. After this determination, Carroll entered a guilty plea to a reduced charge of second degree murder, which was accepted by the court. Because the State proved that on June 28, 1972, Carroll had been convicted of murder, he was properly convicted of capital murder, pursuant to § 13A-5-40(a)(13), for the stabbing death of William Earl Sanders.
We agree with the following statement of the Court of Criminal Appeals:
 "We hold that the term 'conviction' as used in Ala. Code 1975, Section 13A-5-40(a)(13), means that there must have been a prior 'judgment' and 'sentence' and 'determination of guilt' as those terms are defined by Rule 26.1(a)(1), (2), and (3), A.R.Crim.P. We reach that conclusion mindful of the requirement that criminal statutes must be construed so as to give fair warning of the nature of the conduct proscribed and not broadened by judicial interpretation, aware of the interpretation given the term conviction by the weight of authority, and recognizing that the apparent intent and purpose of Section 13A-5-40(a)(13) is to attempt to protect society from the criminal who has been convicted of a prior murder within a limited period of time."
Carroll, 599 So.2d at 1266.
 II.
Did the Court of Criminal Appeals err in affirming the trial court's finding of no mitigating circumstances?
Carroll argues the existence of mitigating circumstances under subsections (2) and (6) of § 13A-5-51. Section13A-5-51(2) provides as a mitigating circumstance that an offense "was committed while the defendant was under the influence of extreme mental or emotional disturbance." Section13A-5-51(6) provides as a mitigating circumstance that "the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."
Dr. Daniel Koch, a psychologist who examined Carroll one year after the second murder, testified for Carroll at the sentencing phase of the trial. Koch diagnosed Carroll as being schizophrenic. He based this evaluation on Carroll's I.Q. and on the results of a standardized personality test. Koch also stated that Carroll interpreted other people's statements literally. At some point in the confrontation between Carroll and Sanders, Sanders had said "Fuck you." Dr. Koch testified that Carroll took this literally, to mean "I am going to fuck you." Dr. Koch also testified that the statement was taken as a homosexual threat, which caused Carroll to react in an extremely drastic manner.
Carroll argues that the killing was committed while he was under the influence of "extreme mental or emotional disturbance," and that the court, therefore, should have found a mitigating circumstance, pursuant to § 13A-5-51(2). In 1970, Carroll was diagnosed as schizophrenic, following a psychological evaluation. On April 12, 1972, Carroll was found sane and competent to stand trial for the murder in Ohio and he was sentenced following a guilty plea. On November 7, 1990, one year after the murder in Alabama, Dr. Koch examined Carroll and diagnosed him as schizophrenic. However, Dr. Koch stated in his opinion on cross-examination that Carroll did not have a valid defense of insanity or diminished capacity. (R. 492.) No evidence at trial indicated that Carroll was "under the influence of extreme mental or emotional disturbance" at the time of the murder.
Carroll argues that he did not have the "capacity . . . to appreciate the criminality of his conduct" at the time of the killing, and, therefore, that the court should have found a mitigating circumstance under § 13A-5-51(6). Dr. Koch testified that Carroll could distinguish right from wrong. Although he had suffered from schizophrenia many years before this murder and was diagnosed with the same disorder one year after this murder, Carroll failed to prove that the disorder "substantially impaired" his "capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." We must conclude that Carroll failed to establish that, at the time of this murder, his capacity to appreciate the criminality of his conduct was impaired to any degree.
In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954,57 L.Ed.2d 973 (1978), the *Page 878 
United States Supreme Court held that, under the United States Constitution, a state's death penalty procedure must not preclude the consideration of relevant mitigating factors.Lockett provides that a state may not exclude evidence that the defendant claims to be mitigating. However, this does not mean that all evidence offered by the defendant as mitigating must be found to be mitigating and considered as such in the sentencing process. Id.
The testimony presented at trial indicated that Carroll acted intentionally and out of anger when he retrieved the sharpened instrument from his cell and returned to the exercise yard to stab Sanders in the heart. The evidence did not require a finding that Carroll acted out of fear of a homosexual assault. Therefore, the Court of Criminal Appeals did not err in this regard.
The Court of Criminal Appeals correctly held that the evidence supported the trial court's finding of no mitigating circumstances.
 III.
Did the Court of Criminal Appeals err in holding that the trial court had not erred in denying Carroll's motion for acquittal based on his claim that the State had failed to prove the elements of murder under § 13A-6-2(a)(1)?
Carroll argues that the evidence in this case fails to support the finding of an intentional murder. Under §13A-6-2(a)(1), a person commits the crime of murder if "[w]ith intent to cause the death of another person, he causes the death of that person or of another person." According to Carroll, the evidence supports a finding that a mentally ill individual killed another person after being provoked by a homosexual threat — but, he says, it does not support the finding of an intentional killing. The question whether a defendant intentionally caused the death of another person is a question of fact for the jury. Carr v. State, 551 So.2d 1169
(Ala.Cr.App. 1989). Intent may be inferred from the use of a deadly weapon or from other attendant circumstances. Garrisonv. State, 521 So.2d 997 (Ala.Cr.App. 1986); Fears v. State,451 So.2d 385 (Ala.Cr.App. 1984). Furthermore, circumstantial evidence, in conjunction with other evidence, may be sufficient to prove intent. Id.
The evidence would well support a factual conclusion that Carroll intentionally killed Sanders over a spilled cup of ice. There was evidence that as Carroll approached Sanders with the weapon he said, "I'll show you what an accident is," and that he then stabbed Sanders in the heart.
Based upon the evidence and issues discussed in this opinion, our careful review of all other issues raised but not discussed herein, and our search and review of the entire record, we conclude that the judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.